FILED
SEP 24 2010

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| LINDSAY HUNT, | Case No. 08-CV-802-AC |
|                Plaintiff, | OPINION AND ORDER |
|    v. | |
| CITY OF PORTLAND, an Oregon municipal corporation; HUBNER, an individual; JOSEPH SCHILLING, an individual; ERIC HENDRICKS, an individual; BRYAN PARMAN, an individual; JUDY BRUMFIELD, an individual, | |
|                Defendants. | |

ACOSTA, Magistrate Judge:

*Opinion and Order*

Plaintiff Lindsay Hunt ("Hunt") moves this court to reconsider and modify its grant of

defendant City of Portland's ("the City") motion for summary judgment on Hunt's Fourth Claim for Relief for deprivation of her constitutional right to free speech. For the reasons set out below, Hunt's motion for reconsideration is denied.

*Background*

In December 2008, Hunt filed this lawsuit against the Portland Police Bureau ("Police Bureau") as well as various police officers for, *inter alia*, deprivation of her constitutional right to free speech. In her lawsuit, Hunt alleged that the City has a policy or custom of "discouraging whistleblower activities by female police officers and covering up officer misconduct including Constitutional and criminal violations" and that the City was acting in accordance with this custom or policy when it engaged in retaliatory acts against her. The City subsequently argued that because Hunt, as a probationary officer, was required to report misconduct, she was not entitled to constitutional protection and moved the court for summary judgment on this issue.

This court began its consideration of the City's motion for summary judgment by analyzing two factors. First, it analyzed whether, as a public employee, Hunt's speech regarding misconduct within the Police Bureau qualified as communication by a private citizen of information of a concern to the general public and was, therefore, constitutionally protected. *See Connick v. Myers*, 461 U.S. 138, 146 (1983). Second, the court analyzed whether, as a public employee, Hunt's speech was pursuant to her official duties and was, therefore, not constitutionally protected. *See Garcetti v. Ceballos*, 547 U.S. 410, 421 (2006). Ultimately, this court concluded that it need not reach a decision regarding the first factor because it found that, as a matter of law, Hunt reported Police Bureau misconduct pursuant to her official duties as a police officer. Because this court determined that the evidence was such that no reasonable jury could return a verdict for the non moving party,

the City was entitled to summary judgment on Hunt's Fourth Claim for Relief for violations of the First Amendment.

Hunt's current motion asks this court to reconsider and modify its grant of the City's motion for summary judgment on her Fourth Claim for Relief in light of Hunt's recent discovery of the case *Posey v. Lake Pend Oreille Sch. Dist. No. 84.*, 546 F.3d 1121, 1131 (9th Cir. 2008). This case was not referenced by the parties in their briefs nor by this court in its ruling. Hunt argues that, under *Posey,* a grant of summary judgment on her First Amendment claim is inappropriate because the question of one's "official job duties" is a factual determination to be resolved by a jury.

## *Legal Standard*

A party may seek reconsideration of a ruling on a summary judgment motion under either FED. R. CIV. P. 59(e) or FED. R. CIV. P. 60(b). A motion for reconsideration under FED. R. CIV. P. 59(e) must be filed no later than 28 days after the entry of a judgment while motions under FED. R. CIV. P. 60(b) must be filed within a reasonable time, with an outside limit of one year after entry of judgment for motions brought under subsections (1) through (3) of Rule 60(b).

The district court generally applies the same analysis under both rules, and its decision is reviewed for abuse of discretion. *See Fidelity Federal Bank, F.S.B. v. Durga Ma Corp.*, 387 F.3d 1021, 1023 (9th Cir. 2004) (discussing Rule 60(b)); *Fuller v. M.G. Jewelry*, 950 F.2d 1437, 1441 (9th Cir. 1991) (discussing Rule 59(e)). Three major grounds justify reconsideration: "the district court (1) is presented with newly discovered evidence, (2) committed clear error or the initial decision was manifestly unjust, or (3) there is an intervening change in controlling law." *School Dist. No. 1J, Multnomah County v. ACandS, Inc.*, 5 F.3d 1255, 1263 (9th Cir. 1993) (citing *All Hawaii Tours, Corp. v. Polynesian Cultural Center*, 116 F.R.D. 645, 648 (D. Hawaii 1987), *rev'd*

*on other grounds*, 855 F.2d 860 (9th Cir. 1988)). Reconsideration is the exception; as the Ninth Circuit has observed, reconsideration is warranted only by these and "[o]ther, highly unusual, circumstances." *School Dist. No. 1J*, 5 F.3d at 1263. *See also Carroll v. Nakatani*, 342 F.3d 934, 945 (9th Cir. 2003) (noting that Rule 59(e) "offers an 'extraordinary remedy, to be used sparingly in the interests of finality and conservation of judicial resources,'" *citing* 12 JAMES WM. MOORE ET AL., MOORE'S FEDERAL PRACTICE § 59.30[4] (3d ed. 2000)).

Rule 60(b)(1) specifically allows a court to correct a final judgment where the judgment was based on "mistake, inadvertence, surprise, or excusable neglect." However, the parties are limited to the arguments previously made and addressed by the court. "A motion for reconsideration is an improper vehicle to tender new legal theories not raised in opposition to summary judgment." *All Hawaii Tours*, 116 F.R.D. at 650. The decision to correct a judgment for mistake or inadvertence, whether made by a party or the court, rests in the discretion of the trial court. *Fidelity Fed. Bank, F.S.B.*, 387 F.3d at 1024.

Rule 60(b) contains a catchall provision, found in subsection six, which allows a court to correct a judgment "for any other reason that justifies relief." To qualify for relief under this provision, a party must "establish the existence of extraordinary circumstances which prevented or rendered him unable to prosecute an appeal." *Martella v. Marine Cooks & Stewards Union, Seafarers Int'l of N. Am.*, 448 F.2d 729, 730 (9th Cir. 1971).

*Discussion*

## I. Plaintiff's Request for Reconsideration

Hunt does not state which ground for reconsideration governs her motion, but, given her reliance on the *Posey* case, she presumably relies on the third ground – that there has been an

intervening change in controlling law.[1] The *Posey* case, however, falls short of reflecting an intervening change in controlling law for several reasons.

First, *Posey* is not new case law that was decided after this court originally granted summary judgment for the City. *See Block v. Multnomah County*, No. 03-CV-6261-MO, 2004 WL 2075416, at *2-3 (D. Or. Sept. 14, 2004) (explaining that although a case that was decided after the court had granted summary judgment was new case law, it was not strongly convincing and thus did not justify reconsideration). Second, Hunt's failure to cite the decision earlier presents insufficient cause to grant reconsideration now. *Regence Group v. TIG Speciality Ins. Co.*, No. 07-CV-1337-HA, 2010 WL 476646, at *2 (D. Or. Feb. 4, 2010).

Further, assuming that *Posey* did represent new case law, the holding in that case does not change the First Amendment analysis that this court employed in its original opinion. In *Posey*, the court held that "when there are genuine and material disputes as to the scope and content of the plaintiff's job responsibilities, the court must reserve judgment on this . . . prong of the protected status inquiry until after the fact-finding process." 546 F.3d at 1131. In its initial consideration of the City's motion for summary judgment, however, this court determined that there were no genuine and material disputes as to the scope and content of the plaintiff's job responsibilities. Thus, summary judgment was appropriate.

II. The City's Motion for Summary Judgment

Even if this court assumes that reconsideration is allowed, it finds, once again, that its grant of the City's motion for summary judgment is appropriate. Hunt alleges that this court erred in

---

[1] Hunt's motion does not address the first major justification in that it presents no new evidence. In addition, as explained below, the second major justification does not apply because this court's grant of the City's motion for summary judgment is neither clear error nor manifestly unjust.

granting the City's motion for summary judgment on Hunt's Fourth Claim for Relief for violations of the First Amendment. She argues that, under *Posey*, when there is a genuine issue of material fact as to the scope or nature of one's job duties in a First Amendment case, "the court must reserve judgment . . . until after the fact-finding process." 546 F.3d at 1131. Hunt further argues that a genuine issue of material fact regarding her job duties exists in this case for several reasons. First, when determining that her speech was pursuant to her official duties as a police officer, the court failed to appreciate that under *Garcetti*, one's "official job duties" are one's real job duties and that reliance on written job descriptions is "neither necessary nor sufficient" evidence of one's "official job duties." *Garcetti*, 547 U.S. at 424-425. Second, Hunt offered significant evidence that her official/real job duties included complying with a "code of silence." Thus, under *Posey*, and viewing the facts in favor of the non-moving party, Hunt asserts that this court should reconsider its grant of the City's motion for summary judgment because there is an issue of fact regarding whether reporting police officer misconduct was or was not part of Hunt's "official job duties."

However, in its initial consideration of the City's motion for summary judgment, this court did precisely what Hunt argues it failed to do. In its analysis, the court specifically recognized that "the inquiry into whether a public employee's speech is pursuant to employment duties is a practical one and that written job descriptions are neither necessary nor sufficient to prove that a certain task falls within the scope of a public employee's duty for First Amendment purposes." *Hunt v. City of Portland*, No. 08-CV-802-AC, 2010 WL 1609568 at *27 (relying on *Garcetti*, 547 U.S. at 424-425). Rather, "[t]he court must consider all of the relevant evidence to determine the extent of a public employee's job obligations." *Hunt*, 2010 WL 1609568, at *27. With this in mind, the court then analyzed the scope of Hunt's job duties.

Hunt appears to concede that, generally, a police officer is officially obligated to report unlawful conduct and misconduct to her superiors and that Hunt was initially held to these same obligations. Moreover, Hunt does not dispute that the City's rules required her to report inappropriate behavior and misconduct or that, as a police officer, she was responsible for the enforcement of statutes and laws. Further, neither Officer Shilling nor Officer Pintarich had the authority to alter Hunt's official duties under state law or Police Bureau policy. Thus, neither Officer Schilling's "I have a job" speech nor Officer Pintarich's statement that it was not Hunt's job to "police the police" altered her official obligations.

Additionally, Officer Ho's conduct could be viewed as a violation of state law. Hunt complained, for instance, that Officer Ho refused to wear his seat belt, ran red lights while driving, and took items from a 7-Eleven store without paying. Also, Officer Ho's asking for identification during conversation stops, use of excessive force, and failure to properly handle evidence all have constitutional implications. Hunt acknowledges as much in her allegations that the City discouraged her from reporting, and covered up, officer misconduct consisting of Constitutional and criminal violations. Furthermore, Hunt's other complaints to her supervisors regarding Officer Ho's lack of knowledge about, and failure to follow, report requirements are evidence of Officer Ho's misconduct within the Bureau and relate specifically to his qualifications as Hunt's training officer.

Finally, Hunt argues that summary judgment is inappropriate because she refused to engage in wrongful conduct and such refusal is never part of an employee's official job duties. Hunt relies on *Fierro v. City of N.Y.*, 591 F. Supp. 2d 431, 444 (S.D.N.Y. 2008), wherein the court held that a public employee's "refusal to commit wrongful acts as directed by his supervisor was not made in the context of a strictly employer-employee dispute, but was spoken as a citizen rejecting the corrupt

direction of a supervisor." The court therefore held that refusing to lodge false accusations against a fellow teacher was protected under the First Amendment. *Id.* Hunt alleges that her refusal to falsify reports and destroy evidence is therefore conduct that is entitled to protection. However, the evidence establishes that Hunt did not refuse to engage in such acts. Rather, she admitted that she complied with Ho's directions by failing to properly preserve evidence and by filing a false police report. Because Hunt has acknowledged that she engaged in the wrongful acts rather than refusing to do so, the holding in *Fierro* does not apply to her situation.[2]

Once again, this court therefore finds as a matter of law that all of this communication was made by Hunt pursuant to her job duties and in her official capacity as a probationary police officer. Accordingly, this court affirms its prior ruling.

*Conclusion*

Hunt's motion (#93) for reconsideration is DENIED.

DATED this 24th day of September 2010.

JOHN V. ACOSTA
United States Magistrate Judge

---

[2] Although refusal to engage in misconduct was not a part of Hunt's official job duties, the court reiterates that this finding is not inconsistent with the court's prior conclusion that her participation in some instances of the wrongful conduct that she reported does not bar her from the protection of OR. REV. STAT. 695A.206(5).