UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| LINDSAY HUNT, | Case No.:  08-CV-802-AC |
| Plaintiff, | ORDER |
| v. | |
| CITY OF PORTLAND, an Oregon municipal corporation; WILLIAM HUBNER, an individual; JOSEPH SCHILLING, an individual; ERIC HENDRICKS, an individual; BRYAN PARMAN, an individual; JUDY BRUMFIELD, an individual; LESLIE PINTARICH, an individual; and QUENCY HO, an individual, | |
| Defendants. | |

ACOSTA, Magistrate Judge:

This order supplements the court's rulings at the May 17, 2011, pretrial conference on the first of plaintiff Lindsay Hunt's motions in limine (Docket No. 140), in which Hunt asks the court to exclude the testimony and report of defendant City of Portland's IME physician, Dr. Eugene

Page 1 - ORDER

Klecan. During the pretrial conference the court denied Hunt's motion in part, ruling that Dr. Klecan would be permitted to testify, for the limited purpose, to his opinion that Hunt has a paranoid personality disorder, that her disorder predated her employment with the Portland Police Bureau, that her current claims of emotional distress are a result of this disorder, and that Hunt has suffered no emotional distress related to the experiences at the Bureau upon which she bases her whistleblower retaliation claims. The court also granted Hunt's motion in part, ruling that certain passages of Dr. Klecan's IME report, and any related testimony, is excluded because they contained comment or opinion on Hunt's credibility, speculated about matters not within his expertise or personal knowledge, and constituted argument on certain answers Hunt provided to him during the IME examination. The court ordered the City to redact those passages from Dr. Klecan's IME report and ruled that the redacted version of his report would be admitted into evidence.

      The remaining admissibility issue to resolve is whether Dr. Klecan also may testify as a liability witness. The City proposes to offer Dr. Klecan's opinion to explain why the inferences Hunt says she made from certain conversations with her Bureau superiors and colleagues, which conversations form the alleged retaliatory actions at issue, do not logically follow from the language of the actual statements made by various Bureau officers who witnessed or participated in those conversations. Summarized, Dr. Klecan will state that Hunt's paranoid personality disorder ("PPD") causes her to misinterpret others' statements, and to infer from statements meanings either not intended by the speaker or not warranted from the statements' content. The City contends that the words actually spoken during the subject conversations in this case are not disputed; rather, the issue is the meaning Hunt attributed to the statements her Bureau superiors and colleagues made during her various meetings with them following her report of a fellow officer's alleged misconduct. The

City observes that Hunt understood those statements to be threats or warnings that she would lose her job, not receive back-up, or suffer some other negative job-related consequence if she did not keep quiet. The City maintains that Dr. Klecan's opinion explains the "dichotomy" or "disconnect" between the Bureau representatives' actual statements to Hunt and the meaning Hunt inferred from those statements.

Federal Rule of Evidence 702 is the starting point for analyzing the admissibility of Dr. Klecan's opinion. An expert witness may provide opinion testimony if it is based on "sufficient facts or data" and "is the product of reliable principles and methods." FED. R. EVID. 702. To determine whether expert testimony is admissible, the court must consider "whether the expert is proposing to testify to (1) scientific knowledge that (2) will assist the trier of fact to understand or determine a fact in issue." *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 592 (1993). This inquiry ensures that the expert's testimony rests on a reliable foundation and is relevant to the issues at hand. *Id*. at 594-95. An expert's testimony is relevant if it logically advances a material aspect of the party's case. *Daubert* v. *Merrell Dow Pharm., Inc.,* 43 F.3d 1311, 1315 (9th Cir. 1995). The *Daubert* relevance standard is liberal. *Daubert*, 509 U.S. at 587-88.

Hunt does not challenge Dr. Klecan's qualifications as a psychiatrist and does not challenge his methodology in reaching his various opinions, including the disputed liability opinion. Consequently, the reliability prong of the court's *Daubert* inquiry is not directly implicated here. Instead, Hunt's opposition turns on the relevancy prong of the *Daubert* analysis. Hunt objects to Dr. Klecan presenting his opinion that Hunt's PPD is the reason she drew threatening and retaliatory inferences from her Bureau superiors' and colleagues' statements. Hunt argues that such testimony comments on the accuracy of Hunt's perceptions and thus on her credibility. Conversely, relying on

the Ninth Circuit's decisions in *U.S. v. Finley,* 301 F.3d 1000, 1013-15 (9th Cir. 2002), and *U.S. v. Vallejo*, 237 F.3d 1008, 1019-20 (9th Cir. 2001), the City argues Dr. Klecan's PPD opinion is relevant to the jury's determination of whether the City retaliated against Hunt.  Specifically, Dr. Klecan's testimony will assist the jury in understanding why Hunt interpreted, as threatening and retaliatory, statements by her Bureau superiors and colleagues that contained no actual threats, retaliatory language, or warnings to keep quiet.  The City contends that Hunt's interpretations are so markedly different from the actual statements made that Dr. Klecan's PPD opinion is necessary to assist the jury in understanding why such a gulf exists between the two.

       The decision in *Finley* flows, in part, from the Ninth Circuit's *en banc* decision in *U.S. v. Morales*, 108 F.3d 1031 (9th Cir. 1998), that "allows testimony supporting an inference or conclusion that the defendant did or did not have the requisite *mens rea*, so long as the expert does not draw the ultimate inference or conclusion for the jury and the ultimate inference or conclusion does not necessarily follow from the testimony."  *Id*. at 1038.  In *Finley*, the district court excluded, under Rule 702, testimony from Finley's psychologist that Finley lacked the intent to defraud due to his atypical belief system, a closed belief system "in which . . . information from the real world . . . is so grossly distorted that the person ends up with ends up with a belief system that the average person in the culture just simply would sit back and say, 'Huh?  How can you believe that?'"  *Id*. at 1006 (internal quotation marks omitted).  The Ninth Circuit reversed the trial court.

       Relevant to the City's purpose here, the Ninth Circuit concluded that the excluded opinion testimony did not speak to the ultimate issue of whether Finley committed fraud:

> Dr. Wicks' expert diagnosis that Finley has an atypical belief system falls into the *Morales / Rahm* line of reasoning and can be distinguished from *Campos.*  The jury could have accepted the atypical belief diagnosis and still concluded that Finley

Page 4 - ORDER

> knowingly defrauded the banks. If credited, Dr. Wicks [sic] testimony established only that Finley's beliefs were rigid and he would distort or disregard information that ran counter to those beliefs. Dr. Wicks did not, and would not be allowed to, testify about Finley's specific beliefs with regard to the financial instruments. The jury was free to conclude that Finley knew the notes were fraudulent, despite the rigidity of his belief system. Just as in *Morales* and *Rahm,* the defense was entitled to present evidence so that the jury could infer from the expert's testimony that the defendant lacked the necessary intent to defraud, but such a conclusion was not necessarily compelled by the diagnosis. A psychological diagnosis, unlike a lie detector test, does not automatically entail an opinion on the truth of a patient's statements. Furthermore, the psychological diagnosis can be limited such that it in no way touches upon the specific issues of fact to be resolved by the jury.

*Finley,* 301 F.3d at 1015-16.

The City also relies on the Ninth Circuit's decision in *United States v. Vallejo*, 237 F.3d 1008, 1019-20 (expert testimony tending to explain how parties "could have very different perceptions" of what occurred during certain communications should have been admitted), *opinion amended on denial of reh'g*, 246 F.3d 1150 (9th Cir. 2001). Vallejo, a high school student living in the United States, drove from Mexico to the U.S. in a vehicle that was searched and found to have 40 kilograms of marijuana hidden in various places. Vallejo was charged with knowing importation. Vallejo defended the charge by arguing someone he met at a swap meet paid him $15 to drive the car into this country and he had no idea it contained marijuana. When interrogated, he told the agents he was equally comfortable in English or Spanish and the interview was conducted in English.

At trial, the agent recalled Vallejo stating that his friend, Francisco, decided not to drive Bebo's car because he suspected it contained drugs, and Vallejo claimed he never said such a thing. *Id*. at 1020. To explain these discrepancies, Vallejo sought to call his high school's psychologist and director of special education to testify about Vallejo's long-standing, severe language disorder, documented by ten years of school and special education records. The Ninth Circuit held the

proposed testimony of the school psychologist addressed an issue beyond the common knowledge of the average layperson, *i.e.*, the special problems that former special education students have when attempting to communicate in English in high pressure situations. *Id*. The expert testimony would have explained how two people, like Vallejo and Agent Pina, could have very different perceptions of what occurred during the interrogation, yet could both be correct from a communications standpoint. The expert would have described Vallejo's communication difficulties to help the jury understand how he struggled to comprehend and communicate during the interrogation and why he appeared to struggle while testifying at trial. *Id*.

      Dr. Klecan's PPD opinion testimony is materially distinguishable from the psychological opinion testimony in *Finley* and *Vallejo*. First, unlike in *Finley*, here the offering party's evidence is not probative of the *mens rea* element that the offering party must have possessed or lacked. Nor, as in *Vallejo*, will the evidence explain inconsistences in Hunt's testimony. Rather, the City's PPD opinion evidence is about Hunt's state of mind, an opinion that has no bearing on whether *the City* was capable of forming retaliatory intent against Hunt. Instead, the City offers the PPD opinion as evidence of *Hunt's* mental state to support its position that the City did not possess the required intent to retaliate against Hunt. Further, the purported purpose, *i.e.*, to explain the disconnect between Hunt and her superiors, will leave the jury only one conclusion, Hunt's perceptions were impaired due to her PPD.

      Second, the PPD opinion testimony is not probative on the required mental state that Hunt must prove she possessed. To establish whistleblower liability against the City under OR. REV. STAT. § 659A.230, Hunt must prove that she "in good faith reported criminal activity" by a fellow officer and that the City retaliated against her because of her report. However, the City does not

offer Dr. Klecan's opinion to challenge whether Hunt was capable of forming the "good faith belief" required by the statute. In fact, at the pretrial conference the City expressly disclaimed this purpose for the PPD opinion. Instead, the City offers Dr. Klecan's PPD opinion to explain the "disconnect" between the actual statements Hunt's Bureau superiors and colleagues made to her and the retaliatory inferences Hunt drew from those statements. This explanation has no relevance to whether Hunt possessed the requisite mental state by the statute, and in fact it does not serve that purpose, as the City has acknowledged.

Third, the PPD opinion testimony invades the jury's fundamental role of determining witness credibility, a role that both the *Finley* and *Vallejo* courts found would not have been displaced by admission of the expert opinions in those cases. The essence of Dr. Klecan's opinion is that Hunt's PPD explains the disconnect between the actual content of those statements and Hunt's inferences from those statements. In fact, the City asserted during the pretrial conference that there is no material dispute about the words actually spoken during these many conversations, but only over Hunt's interpretation of those words. The City reasons that Dr. Klecan's opinion is necessary to assist the jury's understanding why Hunt's interpretations of the statements made to her are so different from the actual content of those statements.

Such an opinion improperly comments on witness credibility, which determination involves more than simply deciding whether or not the witnesses who testify are telling the truth:

> In deciding the facts in this case, you may have to decide which testimony to believe and which testimony not to believe. . . . You may believe everything a witness says, or part of it, or none of it. Proof of a fact does not necessarily depend on the number of witnesses who testify about it.

> In considering the testimony of any witness, you may take into account:
>
>> (1) the opportunity and ability of the witness to see or hear or know the things testified to;
>>
>> * * * *
>>
>> (6) the reasonableness of the witness's testimony in light of all the evidence[.]

NINTH CIRCUIT MODEL CIVIL JURY INSTRUCTIONS, No. 1.11, "Credibility of Witnesses" (2007 ed.). Dr. Klecan's PPD opinion directly addresses Hunt's "ability to see or hear or know" the statements she alleges constituted the retaliatory actions against her by telling the jury her perceptions are flawed. It also effectively disputes the reasonableness of her testimony about those statements, their meaning, and how the speakers intended them. Indirectly, Dr. Klecan's PPD opinion vouches for the ability of Hunt's Bureau superiors and colleagues to accurately see and hear the statements that were made and bestows on those perceptions a quality of reasonableness compared to Hunt's perceptions.

It is well-established that an expert witness is not permitted to testify specifically about a witness's credibility or to testify in such a manner as to "improperly buttress" a witness's credibility. *See, e.g., United States v. Binder*, 769 F.2d 595, 602 (9th Cir. 1985) (because credibility is issue for jury, psychiatric experts may not testify specifically as to credibility or buttress credibility improperly), *overruled on other grounds in U.S. v. Morales*, 108 F.3d 1031, 1035 n.1. (9th Cir. 1997); *United States v. Awkard*, 597 F.2d 667, 671 (9th Cir.1979) (error to permit an expert to testify to the ability of a witness to recall a stabbing, and noting that under the Federal Rules of Evidence, opinion testimony on credibility is generally limited to character, and all other opinions on credibility are for the jury to form); *United States v. Barnard*, 490 F.2d 907, 912-913 (9th Cir. 1973)

(upholding, in the absence of unusual circumstances, the trial court's exclusion of the opinion of a psychiatrist and psychologist that a government witness was a sociopath who would lie when it was to his advantage to do so). The PPD opinion constitutes such testimony. What was said on the occasions in question, how it was said, and the meaning of what was said are fundamental fact questions for the jury's determination and are not the proper subject of expert opinion. *See Chadwick v. Wellpoint, Inc.*, 561 F.3d 38, 48 (1st Cir. 2009) (observing, in affirming the district court's exclusion of expert opinion, that "[t]he district court excluded [the expert's] testimony because '[t]he expert, whatever her professional credentials, is not competent to testify about what *these* supervisors meant, consciously or unconsciously, in using certain words.'").

Accordingly, Dr. Klecan's PPD opinion is excluded, to the extent it relates to liability issues. Paragraph 4 of Dr, Klecan's IME report also is excluded, in its entirety, and must be redacted from the final version of the exhibit.

IT IS SO ORDERED

DATED this 19th day of May, 2011.

       /s/John V. Acosta
        JOHN V. ACOSTA
      United States Magistrate Judge