IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

LINDSAY HUNT,                                                Case No. CV 08-802-AC

                        Plaintiff,                           FINDINGS OF FACT,
                                                             CONCLUSIONS OF LAW,
        v.                                                   AND VERDICT

CITY OF PORTLAND,

                        Defendant.

*Introduction*

From May 23 to June 2, 2011, this case was tried simultaneously to a jury on plaintiff

Lindsay Hunt's ("Hunt") whistleblower claim under OR. REV. STAT. 659A.230 (hereinafter ".230

claim") and to the court on Hunt's whistleblower claim under OR. REV. STAT. 659A.203 (hereinafter

".203 claim"). On June 3, 2011, the jury returned a verdict in favor of the City of Portland ("City")

and against Hunt on Hunt's .230 claim. I now enter my Findings of Fact, Conclusions of Law, and

Verdict on Hunt's .203 claim.

I have considered and weighed the evidence presented at trial. In making my decision, I rely

on and incorporate herein my prior rulings on the legal and factual issues presented and resolved on the City's motion for summary judgment, Hunt's motion for reconsideration of my summary judgment ruling, the parties' respective motions in limine, the parties' respective objections to exhibits and witnesses, the City's objections to Hunt's list of reports under OR. REV. STAT. 659A.203, and during trial. I also rely on the trial record. I mention herein only those facts needed to sufficiently explain the factual basis of my determination of Hunt's .203 claim.

### Verdict

Based on my Findings of Fact and Conclusions of Law made pursuant to FED. R. CIV. P. 52(a) and set forth herein, I find that Hunt has failed to prove the City retaliated against her in violation of OR. REV. STAT. 659A.203 because she reported misconduct by another employee. Accordingly, I render my verdict on Hunt's court-tried .203 claim in favor of the City and against Hunt.

### Procedural Background

Hunt worked for the Portland Police Bureau ("PPB") as a police officer from July 26, 2006, to June 4, 2007. She successfully progressed through Basic Academy, the entry phase of training, phase one of field training, and Advanced Academy. In May 2007, Hunt began phase two of field training with Officer Quency Ho ("Ho") in the Northeast Precinct. On May 29, 2007, after working four consecutive shifts with Ho, Hunt met with officers at PPB's Training Division to express concerns about Ho's behavior. Hunt reported she witnessed Ho engaged in conduct that, she believed, violated various laws or PPB policy and procedures. Hunt subsequently spoke with a number of other Training Division officers as well as officers in other PPB divisions, including management-level officers, about Ho's alleged misconduct. Hunt testified these PPB representatives

told her to stay quiet and not report any future misconduct until she finished probation. She also testified that some PPB representatives told her she might lose her job and even might not receive "back-up" in the field if she continued to report other officers' misconduct during her probationary period. Hunt testified she could not work under these conditions and resigned on June 4, 2007.

Hunt filed her lawsuit on July 3, 2008, against the City and seven PPB officers. She asserted claims of whistleblower retaliation under OR. REV. STAT. 659A.203 and OR. REV. STAT. 659A.230; gender discrimination under OR. REV. STAT. 659A.030; common law wrongful discharge; negligence; and violation of 42 U.S.C. § 1983 based on deprivation of freedom of speech, denial of substantive due process, denial of equal protection, and conspiracy to deprive her of those rights. Hunt amended her complaint twice thereafter to drop and add claims and individual defendants. The court also granted the City's unopposed motion to dismiss an additional claim and, on April 16, 2010, granted in part the City's summary judgment motion. After the summary judgment ruling, only Hunt's state statutory whistleblower claims under OR. REV. STAT. 659A.203 and OR. REV. STAT. 659A.230 remained for trial.

After eight days of trial, the jury returned a verdict in favor of the City on Hunt's .230 claim. Specifically, the jury found Hunt reported in good faith that Ho attempted to enter a citizen's domicile without consent or probable cause and that he ordered a citizen to destroy a knife at a potential crime scene, but found that Hunt did not report in good faith that Ho used excessive force. The jury then found that the City did not retaliate against Hunt by taking materially adverse action because of her good faith report of criminal activity.

### Standards

Under FED. R. CIV. P. 52(a)(1), "[i]n an action tried on the facts without a jury or with an

advisory jury, the court must find the facts specially and state its conclusions of law separately." The district court's findings must be "sufficient to indicate the factual basis for its ultimate conclusions." *Simeonoff v. Hiner*, 249 F.3d 883, 891 (9th Cir. 2001). "[W]here legal claims are tried by the jury and equitable claims tried by the court are 'based on the same set of facts, the Seventh Amendment requires the trial judge to follow the jury's implicit or explicit factual determinations.'" *Sanders v. City of Newport*, 2011 WL 905998, *10 (9th Cir. March 17, 2011), quoting *Miller v. Fairchild Indus., Inc.*, 885 F.2d 498, 507 (9th Cir. 1989) ("Accordingly, we hold that, on remand, the district court in deciding the [equitable] claim will be bound by all factual determinations made by the jury in deciding the [legal] claims.").

### Conclusions of Law

1. OR. REV. STAT. 659A.203(b) states in relevant part that it is an unlawful employment practice for a public employer to:

> Prohibit any employee from disclosing, or take or threaten to take disciplinary action against an employee for the disclosure of any information that the employee reasonably believes is evidence of:
>
> (A) A violation of any federal or state law, rule or regulation by the state, agency or political subdivision; [or]
>
> (B) Mismanagement, gross waste of funds or abuse of authority or substantial and specific danger to public health and safety resulting from action of the state, agency or political subdivision[.]

2. OR. REV. STAT. 659A.203 is intended to protect employees who report conduct that is "serious agency misconduct" having the effect of actually or potentially "undermining the agency's ability to fulfill its public mission." *Hall v. Douglas County*, 226 Or. App. 276, 282 (2009).

3. The mission of the particular agency in part determines whether OR. REV. STAT.

659A.203 applies to the misconduct reported in a specific case. *Hall v. Douglas County*, 226 Or. App. 276, 282 (2009).

4.  The PPB is entrusted with the responsibility to uphold and enforce the laws. The PPB's mission is "[T]o reduce crime and the fear of crime by working with all citizens to preserve life, maintain human rights, protect property and promote individual responsibility and community commitment." (Tr. Ex. 103 (January 2007 Cover Memo).[1])  To carry out its mission, the PPB is authorized to stop and detain persons for questioning; make arrests; use physical force, including lethal force, if warranted; seize property; and take other actions that impinge upon the rights and liberties of citizens.  This authority is to be implemented for lawful purposes.  The misconduct Hunt reported, if it occurred as Hunt described in her reports, actually or potentially undermines that purpose and PPB's ability to perform and fulfill its assigned mission:  the misconduct is contrary to the laws that PPB must enforce and uphold; is inconsistent with PPB directives intended to ensure its officers lawfully and with integrity perform the duties entrusted to them; or erodes public confidence in the agency's honesty, integrity, and objectiveness.

5.  The following allegations of misconduct Hunt reported are within the scope of OR. REV. STAT. 659A.203:

> A.  Attempting to enter a citizen's domicile without consent or probable cause;
>
> B.  Using excessive force by pointing a gun at the occupant of an apartment to gain entrance to the apartment;
>
> C.  Ordering a citizen to destroy a knife at a potential crime scene;

---

[1]  The cover memo appears as the first five pages of Tr. Ex. 103, which exhibit is the PPB Manual of Policy and Procedure.

D.  Accepting free goods from a convenience store;

E.  Telling Hunt to rewrite reports in a manner that omitted material facts to the point of making the report false;

F.  Running red lights; and

G.  Asking passengers of a stopped vehicles for identification w/o reasonable suspicion or probable cause.[2]

These instances of misconduct, if committed, constitute a violation of law, rule, or regulation; or mismanagement, abuse of authority, or substantial and specific danger to public safety.

6. OR. REV. STAT. 659A.203 applies to public employees who report conduct they reasonably believe violates a law, rule, or regulation; constitutes mismanagement, gross waste of funds, or abuse of authority; or creates a substantial and specific danger to public health and safety.  The statute does not apply unless a public employee first makes a report of another employee's misconduct to his or her employer.

7. OR. REV. STAT. 659A.203 establishes an objective standard.  The statute protects public employees who have an objectively reasonable basis to believe that another employee's conduct violated law or policy; it applies to employees who "reasonably believe" the reported conduct is evidence of violation of law or policy.  *See Love v. Polk County Fire Dist.*, 209 Or. App. 474, 488-92 (2006) (discussing the distinction between statutes that protect employees who report "in good faith," statutes that protect employees who "reasonably believe" (as required in ORS 659A.203), and statutes which might require that an actual

---

[2] This conclusion reflects my May 21, 2011, ruling, which was entered as a minute order on May 24, 2011, and appears as docket number 161.

violation have occurred.)  OR. REV. STAT. 659A.203 requires the fact-finder to evaluate

whether, when the facts are viewed objectively, the individual had a reasonable belief that

the conduct was unlawful; violated policy; constituted mismanagement, a waste of funds, or

an abuse of authority; or posed a danger to public health and safety.

8.  OR. REV. STAT. 659A.230, which applied to the jury's determination, sets a subjective

standard of "good faith."  Oregon courts have defined "good faith" as " 'a state of mind

indicating honesty and lawfulness of purpose : belief in one's legal title or right : belief that

one's conduct is not unconscionable or that known circumstances do not require further

investigation : absence of fraud, deceit, collusion, or gross negligence.' "  *Goin v.*

*Employment Dept.*, 203 Or. App. 758, 765 (2006), quoting WEBSTER'S THIRD NEW INT'L

DICTIONARY 978 (unabridged ed. 2002).  Deciding under .230 whether someone acted in

"good faith" requires the fact-finder to evaluate whether the specific individual on the

occasion in question acted from honest belief in the correctness or lawfulness of his or her

action.

9.  OR. REV. STAT. 659A.203 and OR. REV. STAT. 659A.230 employ different standards.

The jury's finding on Hunt's .230 claim that she did or did not in good faith report as

criminal activity the three instances of conduct also to be considered under Hunt's .203 claim

does not settle the question under the .203 claim of whether Hunt had a reasonable factual

basis for reporting those same three instances of conduct.  Thus, the jury's determination of

Hunt's .230 claim does not preempt or preclude the need for a separate determination of

those common instances of conduct under Hunt's .203 claim.

10.  The retaliation clause of OR. REV. STAT. 659A.203(1)(b) reads in relevant part that "it

is an unlawful employment practice for any public employer to . . . [p]rohibit any employee from disclosing, or take or threaten to take disciplinary action against an employee for the disclosure of any information that the employee reasonably believes is evidence of" a violation of law, rule, or regulation, abuse of authority, or substantial and specific danger to public health and safety.

11. "Prohibit", as used in OR. REV. STAT. 659A.203(1)(b), means to "forbid by authority or command" or "[t]o prevent from doing or accomplishing something : effectively stop[.]" WEBSTER'S THIRD NEW INT'L DICTIONARY 1813 (unabridged ed. 1976).

12. Threats of termination of employment for making further reports of misconduct, requiring a PPB probationary officer to not report misconduct as a condition of retaining a probationary position, and threatening to withhold back-up from a PPB probationary officer who reported or intended to report misconduct constitute a prohibition on disclosure and disciplinary action and, thus, retaliation under OR. REV. STAT. 659A.203(1)(b).

13. Although .230 and .203 require different mental states as a condition of their applicability to a given situation, once those mental states are established, the next question under each statute is the same, whether the public employer retaliated against the employee for reporting misconduct.

14. The jury's determination of Hunt's .230 claim on the question of whether or not the City retaliated against Hunt for reporting specific instances of misconduct is binding on my determination of Hunt's .203 claim on the question of whether of not the City retaliated against Hunt for reporting those same specific instances of conduct.

*Findings of Fact*

1. Hunt reported to PPB Training Division personnel that Ho:

    A. Attempted to enter a citizen's domicile without consent or probable cause;

    B. Ordered a citizen to destroy a knife at a potential crime scene;

    C. Accepted free goods from a convenience store;

    D. Told Hunt to rewrite reports in a manner that omitted material facts to the point of making the report false;

    E. Ran red lights; and

    F. Asked passengers of a stopped vehicles for identification w/o reasonable suspicion or probable cause.

The trial testimony and evidence clearly established that Hunt reported each of these six instances of misconduct to the PPB Training Division.

2. Hunt reasonably believed, under OR. REV. STAT. 659A.203, that each of the six instances of misconduct listed above was unlawful, violated policy, constituted mismanagement, a waste of funds, an abuse of authority, or posed a danger to public health and safety. Objective facts supported Hunt's reports. PPB ultimately acted on two of these six behaviors: It reprimanded Ho for mishandling evidence, the knife, in violation of PPB policy, and it directed Ho and other officers to discontinue the practice of accepting free sodas from the convenience store, also a violation of PPB policy. Also, both Ho and Hunt testified that Ho instructed Hunt to add to her written report an entry stating that no knife was found on the victim. That addition made the report misleading by suggesting no knife was found at all when in fact three witnesses, including Ho, testified a knife was found at the scene and Ho chose to dispose of it. The added entry concealed that evidence of a potential crime had been found and allowed Ho to avoid explaining why he did not take custody of the

knife as evidence. Ho also admitted that he asked passengers for their identification during traffic stops in which he did not suspect the passengers of violating any law (*see* Tr. Ex. 29, at 11-17), an action Ho testified was a "gray area" and which Hunt testified she had been instructed during training was prohibited by constitutional constraints. Finally, Ho admitted that he ran red lights without using both the vehicle's siren and emergency lights, as required by Oregon law and PPB policy. (*See* Tr. Ex. 29, at 5-9.)

3. Hunt reported to Training Division personnel as excessive force Ho's pointing a gun at the occupant of an apartment during the NE Sandy incident. Contemporaneous memoranda documenting Training Division personnel's discussions with Hunt expressly and repeatedly reference Hunt's report that Ho used his gun against the apartment occupant during the NE Sandy incident to gain entrance to the apartment. (*See, e.g.,* Tr. Ex. 17, at 2; Tr. Ex. 26, at 1; Tr. Ex. 137, at 1.)

4. Hunt reasonably believed, under OR. REV. STAT. 659A.203, that Ho's pointing a gun at the occupant of the apartment during the NE Sandy incident constituted excessive force. Trial testimony by Ho, Hunt, and the other officer at the scene of the NE Sandy incident uniformly described Ho entering the apartment of an individual after he had looked into one of the apartment's windows, pointed a gun towards the interior of the apartment, and directed the occupant to open the apartment door. Ho testified he approached the broken window of the apartment with his gun drawn, raised his gun to chest height, moved aside the window blinds, pointed the gun toward the apartment's interior, and gave directives to the apartment's occupant. Both Hunt and the other officer at the scene confirmed this description of Ho's actions. From Hunt's physical vantage point at the scene, a reasonable

factual basis existed for her conclusion that Ho had pointed his gun at the apartment's occupant and that he did so to gain access to the apartment. Further, Ho, Hunt, and the other officer at the scene testified that no exigency existed to justify use of the gun to convince the apartment's occupant to allow Ho entry into the apartment.

5. Hunt did not report to Training Division personnel as excessive force Ho's alleged use of physical force against the occupant of the apartment during the NE Sandy incident. The trial evidence established that Hunt did not mention this alleged act when she originally reported Ho to the Training Department on May 29, 2007, or at anytime before she resigned on June 4, 2007. Hunt testified at trial that she included this instance of Ho's conduct in her initial report about Ho's misconduct to her Training Division supervisors, Officers Schilling and Hubner. However, the contemporaneous memoranda Schilling and Hubner created, as well as the contemporaneous memoranda prepared by the various PPB officers who subsequently met with Hunt about her concerns, consistently reference Hunt's report that Ho wrongfully used his gun toward the apartment's occupant but contain no reference that Hunt also reported that Ho used excess physical force against the occupant. (*See, e.g.,* Tr. Ex. 16, 17, 21, 25, 26.) At trial, Hunt provided no explanation for the discrepancy between her trial testimony and the contemporaneous documentation created by different PPB personnel who met with her between the time she first reported Ho's conduct and the day she resigned. Nor did Hunt provide a reason why the various PPB personnel who met with her during that period would consistently document her report about Ho's use of his gun toward the apartment's occupant but consistently omit mention of her report that he used physical force against the occupant. The PPB trial witnesses who prepared contemporaneous memoranda

of their meetings with Hunt generally confirmed that they listed each of Hunt's concerns as she had related them. This testimony was not refuted. Therefore, I find the evidence presented at trial more persuasive that Hunt did not report that Ho used excessive physical force against the apartment's occupant during the NE Sandy incident.

6. At no time from and including Hunt's first report of Ho's misconduct and her resignation did PPB have information or knowledge that Hunt claimed Ho used excessive physical force against the apartment's occupant during the NE Sandy incident.

7. Hunt's .203 claim, to the extent it relies on her allegation that she reported Ho used excessive physical force against the apartment's occupant during the NE Sandy incident does not come within the protection of OR. REV. STAT. 659A.203.

8. In deciding Hunt's .230 claim, the jury found the City did not retaliate against Hunt for reporting that Ho destroyed the knife and that he unlawfully entered an apartment. The jury's finding that the City did not retaliate against Hunt for reporting those two instances of conduct is binding on my determination of the question of whether or not the City retaliated against Hunt under .203 for reporting those two instances of conduct. Accordingly, I find the City did not retaliate against Hunt as to those two instances of conduct.

9. The City did not retaliate against Hunt for reporting that Ho: used excessive force during the NE Sandy incident by pointing a gun at the apartment's occupant; accepted free goods from a convenience store; told her to rewrite reports in a manner that omitted material facts to the point of making the report false; ran red lights; and asked passengers of a stopped vehicles for identification without reasonable suspicion or probable cause. The jury found that Hunt did not prove by a preponderance of the evidence that the City retaliated against

her for reporting criminal activity. That Hunt, for purposes of her .203 claim, also reported additional acts of Officer's Ho's alleged misconduct adds to the number of concerns she voiced to PPB's Training Division but does not diminish the persuasive effect of the jury's finding in favor of the City on the ultimate common issue of whether the City retaliates against Hunt.

10.  Hunt failed to prove the City retaliated against her by taking or threatening to take disciplinary action against her because she reported the additional instances of Ho's conduct, or by prohibiting her from disclosing misconduct in the future. Hunt testified during her case in chief that everyone she met with to report Ho's conduct or discuss her concerns about continuing with PPB warned her that her reports jeopardized her job, advised her to not report misconduct during her probationary period, or told her that she might be retaliated against in the future for her reports or if she continued to report misconduct. Every witness who testified at trial about his or her discussions with Hunt between her first report on May 29, 2007, and her resignation on June 4, 2007, unequivocally and categorically refuted Hunt's testimony.  These witnesses spanned a wide spectrum of age, seniority, rank, departments, and assignments; they included male and female officers; and they included several individuals who no longer work for PPB. Many, if not most, of these same witnesses testified favorably about Hunt's general performance and level of commitment during her academy training or her field duty.  The memoranda entered as trial exhibits that were prepared during this period clearly and in detail documented the PPB representatives' assurances to Hunt that she had acted properly in reporting Ho's misconduct, that her reports would be investigated, and that any substantiated misconduct would be appropriately

addressed, assurances the authors of these exhibits confirmed they made to Hunt during this time period.  These trial exhibits also showed that PPB moved promptly to investigate her concerns about Ho's conduct.   Against this testimony and evidence, Hunt's contrary testimony lacked persuasive force and was less credible in comparison.  Hunt's failure to respond with rebuttal testimony or evidence to refute the contradictory testimony and evidence about these meetings and discussions undermined her accounts about them and called into question her perceptions of them.

11.  Hunt failed to prove the City retaliated against her by threatening or suggesting that she would not receive back-up because she had reported or would in the future report the misconduct of other officers.  Hunt testified that Hubner, during a meeting at a Portland Starbucks store, answered affirmatively to her question "Are you saying I won't get back-up?".  Huber unequivocally denied that he made such a response or said anything during the meeting which directly stated or suggested that Hunt would not receive back-up from other officers if she called for it.  A number of PPB officers testified on this point.  Each officer unconditionally stated back-up is a critical part of their job, that back-up is always given when requested, and that personal differences or animosities between officers are not factors in such a situation – back-up is always provided regardless.  In addition, many of these witnesses testified he or she had never heard of any occasion on which an officer had requested back-up and back-up was withheld or not given.  The only witness who suggested such an incident occurred was former PPB officer Erin Lewis, who described two occasions on which her field training officer, when looking at the in-car computer terminal, allegedly said they would not respond to a call.  The City, however, presented evidence that calls for

back-up were always sent by dispatch over the radio, never by computer terminal; the terminal showed non-urgent calls accruing in the sectors of those officers on-duty during that shift. Hunt did not refute this evidence, and the evidence she did present failed to prove, in light of all the evidence on this point, that PBB generally or that any of its individual officers specifically would deny back-up to Hunt because she had reported as misconduct Ho's various actions during the four shifts Hunt worked with him.

12. The burden to prove her .203 claim by a preponderance of the evidence rested with Hunt as the plaintiff, and considering all the evidence, I find that she failed to carry her burden.

13. Hunt did not prove by a preponderance of the evidence that the City of Portland retaliated against her by prohibiting her from disclosing violations of law, rules or regulations; mismanagement; abuse of authority; or conduct posing a substantial and specific danger to public health and safety; or by taking or threatening to take disciplinary action against her because she had disclosed or intended in the future to disclose such conduct, or by denying or threatening to deny her back-up.

*Conclusion*

For the above reasons, I find for the defendant City of Portland and against plaintiff Lindsay Hunt on Hunt's whistleblower claim under ORS 659A.203, and enter a verdict in favor of the City of Portland on Hunt's claim under OR. REV. STAT. 659A.203.

DATED this _16th_ day of June, 2011.

John V. Acosta
U.S. Magistrate Judge

15    FINDINGS OF FACT, CONCLUSIONS OF LAW, AND VERDICT