IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

LINDSAY HUNT,                                                          Case No. CV 08-802-AC

                                        Plaintiff,              OPINION AND ORDER

                    v.

CITY OF PORTLAND,

                                        Defendant.

    Before the court is defendant City of Portland's ("City") cost bill.  This case was tried

simultaneously to a jury on plaintiff Lindsay Hunt's ("Hunt") whistleblower claim under OR. REV.

STAT. 659A.230 and to the court on Hunt's whistleblower claim under OR. REV. STAT. 659A.203.

On June 3, 2011, the jury returned a verdict in favor of City and against Hunt on Hunt's claim under

OR. REV. STAT. 659A.230.  On June 16, 2011, the court rendered its verdict in favor of City and

against Hunt on Hunt's claim under OR. REV. STAT. 659A.203.  City, as prevailing party, now seeks

to recover $50,942.95 in costs.  The court grants in part and denies in part City's cost bill, and

awards City $9,537.14 in total costs.

1     OPINION AND ORDER

*Background*

City hired Hunt on July 26, 2006, to serve as a police officer with the Portland Police Bureau ("PPB"). Hunt progressed through Basic Academy, the entry phase of training, phase one of field training, and Advanced Academy. In May 2007, Hunt began phase two of field training. After working four night shifts with her assigned field training officer ("FTO"), Hunt reported various alleged misconduct by her FTO to PPB Training Division officers responsible for overseeing the filed training program. City responded to Hunt's report but, Hunt alleged, City did not take her complaints seriously and advised her to refrain from reporting misconduct by fellow officers until after she finished her probationary period. Ultimately, Hunt had asserted, City warned her that if she continued to report officer misconduct she might lose her job or risk not receiving back-up if she requested it. Hunt resigned her position on July 4, 2007.

Hunt filed her lawsuit on May 22, 2008, in Multnomah Count Circuit Court against City and seven PPB officers, who removed the case to this court on July 3, 2008. Hunt asserted claims based on whistleblower retaliation, gender discrimination, wrongful discharge, negligence, deprivation of free speech under § 1983, deprivation of equal protection under § 1983, conspiracy under § 1983, deprivation of due process under § 1983, and, later, intentional interference with economic relations. As a result of amendments to her complaint, an opposed motion to dismiss filed by defendants, and the court's ruling on summary judgment, only Hunt's two whistleblower claims proceeded to trial and City remained as the only defendant. Trial began on May 23, 2011, and concluded on June 2, 2011. The jury returned its verdict for City on June 3, and on June 16, 2011, the court issued its verdict on Hunt's court-tried claim.

The parties vigorously contested Hunt's claims and the defendants' defenses throughout the

2    OPINION AND ORDER

litigation phase of the case. The defendants filed a motion to dismiss and an extensive motion for summary judgment. Hunt amended her complaint twice, filed a motion to compel discovery, and filed a motion for reconsideration of the court's summary judgment ruling on her freedom of speech claim. The parties' efforts to negotiate a mutually agreed resolution of Hunt's claims were unsuccessful.

Trial lasted eight days. Dozens of exhibits were admitted and, collectively, the parties called 25 witnesses, including one expert medical witness. Both sides also submitted numerous motions in limine, as well as objections to each other's exhibits and witnesses, which motions and objections the court ruled on at the pretrial conference. As with the summary judgment motion, the parties' respective briefing on these issues was extensive.

*Standards*

The specific items a prevailing party may recover as costs are listed in 28 U.S.C. § 1920:

(1) Fees of the clerk and marshal;

(2) Fees for printed or electronically recorded transcripts necessarily obtained for use in the case;

(3) Fees and disbursements for printing and witnesses;

(4) Fees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case;

(5) Docket fees under section 1923 of this title;

(6) Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under section 1828 of this title.

Costs "should be allowed to the prevailing party." FED. R. CIV. P. 54(d)(1). This rule creates a presumption in favor of awarding costs to the prevailing party; if a district court departs

3    OPINION AND ORDER

from that presumption, it must provide an explanation so that the appellate court can determine whether the district court abused its discretion. *See, e.g., Association of Mexican-American Educators* v. *State of California,* 231 F.3d 572, 592-93 (9th Cir. 2000) (en banc) (if disallowing costs, the district court should "explain why a case is not 'ordinary' and why, in the circumstances, it would be inappropriate or inequitable to award costs."). *See also Save Our Valley v. Sound Transit,* 335 F.3d 932, 945 (9th Cir. 2003) (district court "need only find that the reasons for denying costs are not sufficiently persuasive to overcome the presumption in favor of an award"). Courts, however, are free to construe the meaning and scope of the items enumerated as taxable costs in §1920, *Taniguchi v. Kan Pacific Saipan, Ltd.,* 633 F.3d 1218, 1221 (9th Cir. 2011); *Alflex Corp. v. Underwriters Lab., Inc.,* 914 F.2d 175, 177 (9th Cir. 1990) (per curiam), and even if a party satisfies the definition of prevailing party, the district court retains broad discretion to decide how much to award, if anything. *Farrar v. Hobby*, 506 U.S. 103, 115-16 (1992). See also *Arboireau v. Adidas Salomon AG*, No. 01-105-ST, 2002 WL 31466564, at *4 (D. Or. June 14, 2002) (trial judge has wide discretion in awarding costs under FRCP 54(d)(1)). In exercising this discretion, the court may consider the manner in which trial was conducted. *Manildra Mill. Corp. v. Ogilvie Mills, Inc.,* 76 F.3d 1178, 1183-84 (Fed. Cir. 1996). Ultimately, it is "incumbent upon the losing party to demonstrate why the costs should not be awarded." *Stanley v. Univ. o/Southern California,* 178 F.3d 1069, 1079 (9th Cir. 1999).

*Discussion*

I.    Policy Issues.

As a threshold issue, Hunt argues policy reasons warrant denying the City's cost bill in its entirety. Hunt asserts that to grant City's requested costs of over $50,000 would "chill" civil rights

litigation on issues of "grave public importance." (Plaintiff's Objections to Defendant's Bill of Costs ("Pl's. Objections") at 2.)  She also contends that paying $50,000 in costs to City would be inequitable given her "modest [financial] means."  *Id.*  Neither ground is sufficient here to relieve Hunt of her presumptive obligation to pay costs to City as the prevailing party.

A.       *Ability to Pay*

Hunt supports her argument with two Ninth Circuit cases, *Stanley v. University of Southern California*, 178 F.3d 1069 (9th Cir. 1999), and *Association of Mexican-American Educators v. State of California*, 231 F.3d 572 (9th Cir. 2000).  *Stanley* affirmed the district court's summary judgment in favor of the defendants on the plaintiff's Equal Pay Act, contract, and discrimination claims, but reversed the district court's decision to tax costs in favor of the defendants.  The Ninth Circuit found the trial court abused its discretion because of its "failure to consider two factors:  Stanley's indigency, and the chilling effect of imposing such high costs on future civil rights litigants." *Stanley*, 178 F.3d at 1079.  The Ninth Circuit remanded the issue of costs to the district court "for reconsideration in light of these factors."  *Id.*  In *Association*, the Ninth Circuit held the trial court did not abuse its discretion by refusing to require the plaintiff organizations to pay the defendants the $216,443.67 in costs the defendants had requested.  In so holding, the appellate court overruled its previous precedent that suggested costs could be denied only because of a prevailing party's misconduct.  *Association*, 231 F.3d at 592-93.  The Ninth Circuit then found the trial court acted within its discretion under Federal Rule of Civil Procedure 54(d)(1) by considering the plaintiffs' limited financial resources and the important public issues presented by the case, and citing these factors in explanation of its decision to deny costs.  *Association*, 231 F.3d at 593.

Here, Hunt's financial circumstances are significantly more favorable than those of the

5       OPINION AND ORDER

*Stanley* plaintiff.  As the *Stanley* court noted, "[t]he pertinent time, of course, is the time the costs were initially taxed; whatever may have occurred since that time is of no consequence." *Stanley*, 178 F.3d at 1080.  Here, not only was Hunt employed at the time City filed its cost bill in June 2011, she has been continuously employed with the same employer since December 2007, five months after she resigned from PPB.  The evidence at trial showed that in this three and one-half year period, Hunt's salary consistently increased, that in calendar year 2010 she had earned over $60,000, and that as of May 1, 2011, she already had earned $23,000.  In contrast, the *Stanley* plaintiff was unemployed at the time defendants filed their cost bill, a fact constituting "persuasive evidence that she would be rendered indigent" if force to pay the entire $46,710.97 the trial court awarded.

Further, the *Stanley* court did not hold that the plaintiff there should not pay the defendants *any* costs at all.  Instead, the Ninth Circuit remanded the issue of costs to the trial court for "re-taxing," in light of the plaintiff's ability to pay and the potential chilling effect of paying costs. Implicit in the Ninth Circuit's remand order is that the trial court could properly exercise its discretion to tax costs against the plaintiff in some amount.  Here, this court does not award City the entire $50,942.95 it seeks but instead has awarded a much smaller portion of that amount, an amount the trial evidence demonstrates is within Hunt's ability to pay.  Further, Hunt opposes only an award of "over $50,000 in costs . . . given the chilling effect that such an award could have on civil rights litigants who bring important cases that are a matter of public concern." (Pl's. Objections at 2.)  She does not argue a chilling effect would result from paying a much lower amount of costs, such as the amount the court has ordered here.  Hunt's declaration substantiates this reading of her argument on this issue: "Had I known that the City of Portland would attempt to have me pay exorbitant costs, I would have had serious concerns about bringing my lawsuit." (Declaration of Lindsay Hunt ("Hunt

6    OPINION AND ORDER

Decl.") at 2.) Hunt's statement implicitly acknowledges she expected to pay some amount of costs to the City if she sued and lost, which is the precise situation she now faces.

The *Association* case is not helpful on the ability to pay issue because it focused on the proper exercise of the district court's discretion in determining a cost award, not on the unsuccessful plaintiff's ability to pay. First, the Ninth Circuit held that under Rule 54(d)(1), the trial court's discretion is not limited to considering only a prevailing party's misconduct in deciding to deny costs, overruling prior precedent to the contrary. *Association*, 231 F.3d at 592-93. Second, the appellate court reinforced the principle that the trial court retains discretion to deny costs, but clarified that the trial court must explain the reasons for denial to allow appellate review: "We simply hold that the reasons that the district court gave for refusing to award costs in this case were appropriate under Rule 54(d)(1) and that, considering those reasons, the court did not abuse its discretion in refusing to award costs to Defendants." *Association,* 231 F.3d 593. The Ninth Circuit's holding in Association did not turn on the unsuccessful plaintiffs' ability to pay and, thus, provides no useful guidance here.

### B.    *Chilling Effect*

Hunt contends a cost award of over $50,000 against her would produce "a chilling effect . . . on civil rights litigants who bring important cases that are a matter of public concern." (Pl's. Objections at 2.) She supports her argument with both *Stanley* and *Association* as examples of important public issues warranting denial of a prevailing defendant's cost bill. She cites daily coverage of her trial in Portland's *The Oregonian* newspaper, her interview with PPB's Citizen's Review Committee about PPB investigatory processes, and her "code of silence" theme to substantiate that her lawsuit ranks with *Stanley* and *Association* as an important case involving

matters of public concern.  (Pl's. Objections at 2-3.)

The first distinction here is Hunt does not face a cost award the size either of the costs awarded in *Stanley* or the costs sought but denied in *Association*.  No doubt, a cost award exceeding $200,000, the amount requested in *Association*, would produce a chilling effect for most individual litigants.  However, Hunt does not face liability for such an amount here, either potentially or actually.  The amount City seeks here almost equals the amount awarded in *Stanley*, but the court has determined that the decided majority of those costs are not properly recoverable.  Thus, the potential chilling effect of a $50,000 cost award ultimately is academic, as City will not recover that amount or an amount close to it.

Next, the cases Hunt cites ultimately are inapposite.  As previously noted, *Stanley* merely remanded to the district court its cost award with the directive to consider the plaintiff's ability to pay and the potential chilling effect of a cost award in excess of $46,000.  The *Stanley* court did not hold that the facts there warranted outright denial of *any* amount of costs to the defendants. Furthermore, the Ninth Circuit's opinion contains no analysis that explains why the case is of "gravest public importance."  Instead, the opinion contains only a cursory reference to "important issues," the answers to which were "far from obvious" – a characterization that might well apply to a significant percentage of employment cases.  The opinion allows no clear understanding which of the plaintiff's legal claims – Equal Pay Act, discrimination, Title IX, or breach of contract – were the "important issues" or which of the answers derived were "far from obvious."

In *Association*, the Ninth Circuit found the district court's reasons for denying the defendants' cost bill sufficient to overcome Rule 54's prevailing party presumption.  Those reasons included the explanation that the litigation between the plaintiffs, who consisted of professional

associations of minority educators and individual minority educators, and the State of California and its credentialing commission, "effects tens of thousands of Californians and the state's public school system as a whole." *Association*, 231 F.3d at 593. The Ninth Circuit noted that the district courts retained discretion to limit or refuse "such overwhelming costs in important" civil rights cases to avoid "discouraging potential plaintiffs from bringing such cases at all." *Id.* An important distinction between *Association* and the current case is the scope of the litigated issues: the plaintiffs' claims in Association had state-wide implications for the public schools of California, their students, and a significant contingent of their teachers; Hunt's claims concerned her, and the relief she sought, if obtained, was limited to her.

The cases upon which Hunt relies involved facts and issues of greater magnitude and scope than those her lawsuit raised. Hunt's primary allegations were gender discrimination, retaliation, and whistleblower violations, allegations found in a significant percentage of employment lawsuits. The relief she requested also was similar, as she sought to benefit herself primarily, and had she received the relief she requested, its impact would have been limited to her. The presence of her free speech claims does not change this conclusion, because this claim was an alternative legal theory the purpose of which was to obtain redress for the defendants' alleged retaliatory conduct which caused her to resign. In sum, Hunt's lawsuit raised meaningful issues but not issues of "gravest public importance" when her case is measured against the cases she cites and the context of employment discrimination cases as a whole.

Accordingly, the court concludes that complete denial of costs to City based on is not warranted based on the policy reasons relied upon by Hunt.

/ / / / /

II.    Cost Items.

Having concluded that Hunt is not relieved of her obligation under Rule 54 to pay costs to

City, the court determines the individual items of City's cost bill.

A.    *Filing Fee (28 U.S.C. § 1920(1))*

A prevailing party may recover "[f]ees of the clerk[.]"  28 U.S.C. § 1920(1).  Defendants

filed this case by removing it from state court to this court on July 3, 2008.  Nothing in the record

suggests they should not recover this filing fee.  Hunt's argument that the filing fee should be denied

because defendants removed the case from state court, the venue she chose, is unpersuasive.  Hunt's

initial complaint included claims based on federal law, and she certainly knew those claims created

federal jurisdiction and that defendants were very likely to remove her case to federal court for that

reason.  Accordingly, the court allows this cost in the amount of $350.00.

B.    *Fees for Printed or Electronically Recorded Transcripts Necessarily Obtained for use in the Case (28 U.S.C. § 1920(2))*

City seeks $25,661.16 for various items under this category.  The court addresses each item

or group of items separately.

1.    Deposition transcripts.

Under 28 U.S.C. § 1920(2), a prevailing party may recover "[f]ees for printed or

electronically recorded transcripts necessarily obtained for use in the case[.]" *See also* FED. R. CIV.

P. 54(d)(1) ("costs . . . should be allowed to the prevailing party").  "Depositions are 'necessary' if

introduced into evidence or used at trial for impeachment or cross-examination." *Arboireau*, 2002

WL 31466564, at *5.  The cost of a deposition not used at trial still may be recovered "if taking the

deposition was reasonable as part of the pretrial preparation of the case rather than merely discovery

for the convenience of counsel, or if the deposition was required for a dispositive motion." *Id.*  The

10     OPINION AND ORDER

underlying inquiry is whether the depositions reasonably seemed necessary at the time they were taken. *Manildra Mill. Corp. V. Ogilvie Mills, Inc.*, 76 F.3d 1178, 1184 (Fed. Cir. 1996), citing 10 CHARLES A. WRIGHT, ARTHUR R. MILLER & MARY KAY KANE, FEDERAL PRACTICE AND PROCEDURE § 2676, at 341 (2d ed. 1983)

City seeks the costs incurred to depose Hunt, her treating psychologist, and three of Hunt's witnesses, all of whom testified at trial. Hunt objects to City's request for copies of the transcripts because, she argues, all the deposed witnesses "were available for examination at trial, making the deposition transcriptions conveniences," and because City's attorneys could have inspected the originals. (Pl's. Objections at 5.) As a general observation, obtaining copies of deposition transcripts for counsel's use at trial is a common practice in this district and is reasonably calculated to properly prepare for trial and within Rule 54's "necessity" requirement. Moreover, here each of the deposed witnesses were listed as trial witnesses and actually did testify at trial. Thus, these transcripts were necessarily obtained in the case and the court awards costs for their expense in the amount of $6,264.26.

City also asks for the costs incurred to obtain copies of the depositions of the seven individual defendants. The court dismissed the individual defendants well prior to trial, but Hunt deposed each of the seven, and either Hunt subpoenaed them or City called them as witnesses at trial. The court's observations about the deposition transcripts for Hunt, Dr. Burson, and Hunt's three witnesses apply with equal logic to this group of witnesses, each of whom also were named parties in the case. Accordingly, these transcripts were necessarily obtained in the case and the court awards costs for their expense in the amount of $2,103.00.

/ / / / /

11     OPINION AND ORDER

2.      Video depositions.

City also seeks to recover the costs incurred in videotaping of Hunt's deposition, in addition to the cost incurred to obtain the printed transcript of the deposition. City states Hunt's deposition "was essential" and "[a]t trial, portions of the videotaped deposition were shown." (Defendant's Memorandum of Law in Support of Bill of Costs ("Def's. Memo.") at 3.) City contends the video version of Hunt's deposition was necessary "because capturing plaintiff's deposition demeanor on camera was a reasonable part of the pretrial preparation in this case." *Id.* at 2.

In *Puella v. Intel Corporation*, No. 08-1427-AC, 2010 WL 3361089 (D. Or. Aug. 25, 2010), this court denied a similar request supported by similar rationale:

> The demeanor of any witness, including the plaintiff in an employment lawsuit, is important in any case. That general principle, however, should not automatically convert a videographer's fee into a recoverable item of cost where a court reporter also attended and transcribed the deposition and the party seeking to recover the videographer's cost does not offer one or more reasons specific to the case to justify an award of costs for both items. Routinely allowing recovery of the cost incurred for both the court reporter's transcript and a separate videographic record of depositions duplicates deposition costs without purpose.

*Puella*, 2010 WL 3361089, at *3.

City offers the same reasons here in support of its own request for video deposition costs as those offered by the prevailing defendant in *Puella*, and as in *Puella*, those reasons are not sufficient to justify awarding this item of cost. City played Hunt's video deposition at trial as direct testimony when Hunt was present and could have been questioned or the transcript from her deposition could have been read. City also played the video for impeachment even though the transcript was readily available for the same purpose. Case strategy or tactics in a particular case might support a decision to employ a videographer in addition to a court reporter at a plaintiff's deposition, but litigation strategy or tactics are different considerations from Rule 54's "necessity" requirement. Here,

12      OPINION AND ORDER

necessity has not been proven. City could have achieved a sufficiently comparable effect by using Hunt's written deposition transcript. Accordingly, the court denies this item of cost.

### 3.    Certified transcripts of informal interviews.

City asks for the cost to transcribe and record an informal interview of a witness to one of the events at issue in Hunt's lawsuit, as well as expenses for other informal interviews. Hunt objects to these items because the witness interview were not obtained after Hunt made formal legal claims against City but prior to that, during City's internal investigation of Hunt's allegations against her field training officer. (Pl's. Objections at 6.) Section 1920(2) explicitly states that only "[f]ees for printed or electronically recorded transcripts necessarily obtained for use in the case" may be recovered. At the time of these interviews there was no "case." City's request to recover expenses incurred at a time when no lawsuit existed is denied.

### 4.    Transcripts of court proceedings.

City seeks $12,549.10 in costs for transcripts of each trial day's proceedings, three motion hearings, and the pretrial conference. City offers no reason unique to this case to support its request for daily trial transcript costs. City supports its request for the transcript costs of motion and discovery hearings only with the representation that it "ordered these transcripts to prepare responses to plaintiff's motion in limine and for witness and trial preparation." (Def's. Memo at 4.) Hunt opposes the entirety of City's request. She characterizes daily transcripts as a "luxury" for trial counsel and argues the transcripts of other proceedings were unnecessary because the court issued written rulings after each hearing. (Pl's. Objections at 5-6.)

Some courts apply a heightened standard of necessity when determining whether the cost of daily trial transcripts should be awarded under Rule 54(2). *See, e.g., Maris Distributing Co. v.*

*Anheuser-Busch, Inc.*, 302 F.3d 1207, 1225-26 (11th Cir. 2002) (remarking that whether to award the costs of daily transcripts is a "closer question," and stating "we do not believe that the costs associated with expedited trial transcripts should be allowed as a matter of course, lest litigation costs be unnecessarily increased[.]"). The trial's length and complexity usually weigh more significantly when determining whether daily transcripts were "necessary." *Id.* (noting the district court's finding the expedited transcripts were necessary in this case given its length and complexity."). The expense of daily transcripts usually requires prior court approval or a finding by the district court that "the case is complex and the transcripts proved invaluable to both the counsel and the court." *A.B.C. Packard, Inc. v. General Motors Corp.*, 275 F.2d 63, 74 (9th Cir. 1960).

Here, the cost of daily transcripts is not warranted. First, City did not obtain a stipulation from Hunt or seek the court's prior approval that daily transcripts were necessary and, thus, their cost potentially recoverable. Second, trial of Hunt's claims did not involve the complexity or length that would justify as "necessary" obtaining daily trial transcripts. The evidence was not complicated: no scientific, medical, financial, or similarly technical or complex testimony was presented at trial that might better support a claim of need for daily transcripts. The evidence consisted of witnesses, who described events they witnessed or experienced, and documents, almost of all of which were letters, emails, police reports, and job applications. No engineering specifications, financial reports, medical records, environmental studies, patent drawings and claims, or other similarly complex material were part of the evidence at trial. Only one expert witness testified, called by City, but neither his testimony nor the portions of his expert report admitted into evidence begin to justify a request for transcripts of *every* trial day. Nor does the trial's eight-day length, in light of the straightforwardness of this evidence, provide support for City's suggestion that daily transcripts were

14     OPINION AND ORDER

needed. Even without applying the heightened standards used by some courts to examine "necessity" of daily transcripts under Rule 54, City's argument falls far short of rule's requirements. The costs of the daily trial transcripts are denied. *See also Manildra Mill. Corp.*, 76 F.3d at 1184 (affirming district court's award of daily transcript costs in patent case where district court expressly found daily transcripts "'were necessarily obtained and invaluable to both the court and the parties [and because] it is beyond dispute that the issues litigated were complex and the trial lengthy'").

City's request for the costs incurred to transcribe the other pretrial proceedings similarly falls short, with one exception. The court documented each of its contested motion rulings in detailed written minute orders (*see* Docket No. 49, Hunt's motion to compel) or formal opinions (*see* Docket No. 33, defendants' motion to dismiss; Docket No. 95, defendants' motion for summary judgment), mooting City's contention of need for these transcripts "to make sure it fully understood and complied with the Court's rulings." (Affidavit of Jennifer Johnston ("Johnston Aff.") at p. 6.) The court's pretrial conference rulings similarly were captured in a detailed minute order (*see* Docket No. 159).

On this point, *Kyei v. Oregon Dept. of Trans.*, No. 07-1607-AC, 2010 WL 935489 (D. Or. March 11, 2010), relied on by City, is plainly different. There, this court awarded defendant the cost of the summary judgment hearing transcript because the court ruled from the bench and did not follow its oral ruling with a detailed written order or opinion:

> The court ruled from the bench on ODOT's and the other defendants' summary judgment motion. Well in advance of that hearing the court advised counsel for the parties that it intended to rule from the bench to ensure that the case would be tried, if trial was necessary, on the previously scheduled trial date. Neither side objected to the court ruling from the bench. Transcription of the summary judgment hearing would have been necessary to obtain written details of the court's ruling on the defendants' motion, as well as for use in the case going forward to trial.

15    OPINION AND ORDER

*Id.* at *3.

Further, none of the transcripts City ordered appear to have been ordered in response to a dispute or unresolvable question about the court's rulings. The record and the court's docket, suggests that City's decisions to obtain these hearing transcripts were not because the written rulings lacked clarity in some respect or because of inability to obtain clarification from the court through phone conference, but instead from a reflexive practice to order every transcript of every hearing in the event any of the transcripts might be needed for any reason. Nothing in the record supports the conclusion that, in the circumstances of this case, any of these hearing transcripts were "necessary" as contemplated by Rule 54. Accordingly, City's request for the costs of these three hearings is denied.

The one exception is the transcript for the June 18, 2010, hearing regarding the scope of the independent medical examination and it documentation. This hearing appears as Docket No. 103 in the court's file. The court's minute order does not fully or adequately reflect the details discussed during that hearing and that are documented in the fourteen-page transcript of the hearing. This transcript meets the "necessity" requirement because the court's directives to City regarding the scope and conduct of the examination were critical to whether the examination results would be admissible at trial. City properly ordered the transcript to ensure its expert was fully informed of and complied with the court's directives regarding the conduct of the examination. Accordingly, the court awards City $108.75 for this cost.

C.      *Fees and Disbursements for Printing and Witnesses (28 U.S.C. § 1920(3))*

Under 28 U.S.C. § 1920(3), a prevailing party may recover witness fees. A witness is entitled to a fee of $40.00 for each day the witness is testifying. 28 U.S.C. § 1821(b) ("A witness shall be

16      OPINION AND ORDER

paid an attendance fee of $40 per day for each day's attendance."). *See also First Nat. Mortg. Co. v. Federal Realty Inv. Trust*, 631 F.3d 1058, 1071 (9th Cir. 2011) (federal law allows recovery of only "forty dollar per day per witness"). Mileage is permitted in addition to this fee. 28 U.S.C. § 1821(c)(2) (providing for a "travel allowance equal to the mileage allowance" paid to federal employees). *See also Dimon v. Oregon*, No. 08-6152-HO, 2009 WL 3401048 (D. Or. Oct. 20, 2009) (awarding witness fee and mileage); *Kyei v. Oregon Dept. of Trans.*, No. 07-1607-AC, 2010 WL 935489, at *4 (D. Or. March 11, 2010) (same).

City seeks witness fees in the amount of $1,731.13. This amount includes the $40.00 fee and appropriate mileage permitted by statute for Bach, Butler, Hubner, Nuxall, Schilling, and Smith, all of whom were subpoenaed for trial. The court awards these costs in the amount of $311.50.

City also seeks the witness fees and mileage for appearance at deposition of Cox, Susan Hunt, Lewis and Dr. Burson. The witness fees for Cox, Susan Hunt, and Lewis are awarded in the amount of $136.99. As to Dr. Burson, City seeks a deposition witness fee of $1,080.00. Regardless of the actual cost incurred by a prevailing party for an expert's appearance at deposition or trial, the prevailing party may recover only the forty-dollar fee provided by the statute. *See First Nat. Mortg. Co.*, 631 F.3d at 1070-71 (affirming district's court award of $40 witness fee for expert witness because 28 U.S.C. § 1821(b) allows only that amount). Accordingly, City's request for Dr. Burson's deposition appearance fee is awarded, but only in the amount of $40.00.

Finally, City seeks to recover the witness fees incurred to subpoena records from T-Mobile and Dr. Burson, and to make public record requests to the City of Gresham and City of Troutdale. These costs are awarded in the amount of $202.64.

17    OPINION AND ORDER

D.      *Copy Costs and Exemplification Fees (28 U.S.C. § 1920(4))*

City seeks costs of $23,040.66 under this category. The amount includes the cost for copies of documents, third-party document duplication services, demonstrative exhibits at trial, and a separate third-party trial technology specialist used at and in preparation for trial. City asserts that use of a third-party vendor to duplicate documents for discovery and trial was more efficient, and the trial technology specialist more efficiently used trial time by quickly displaying exhibits and relevant portions of exhibits, including by displaying only the exhibits needed. City point out this, in turn, avoided the cost to prepare enlarged exhibits that might not have been used. (Def's. Memo at 5-9; Johnston Aff. pp. 12-14.) Hunt opposes City's request for these cost items. She argues the copying costs are excessive and lack the specificity required under the court's rules, and contends the trial technology specialist was unnecessary and merely an "indulgence," the cost of which should not be shifted to her. (Pl's. Objections at 7-9.) The court addresses these items separately.

    1.      Copying costs.

A prevailing party may recover "[f]ees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case." 28 U.S.C. § 1920(4). Copying costs for documents produced to opposing parties in discovery, submitted to the court for consideration of motions, and used as exhibits at trial are recoverable. *Teicher v. Regence Health and Life Ins. Co.*, No. 06-1821-BR, 2008 WL 5071679, at *11 (D. Or. Nov. 24, 2008); *Arboireau*, 2002 WL 31466564, at *6 (citing *Fressell v. AT&T Tech., Inc.,* 103 F.R.D. 111, 115-16 (N.D. Ga. 1984)). However, recoverable copying costs "do 'not include extra copies of filed papers, correspondence, and copies of cases since these are prepared for the convenience of the attorneys.'" *Arboireau*, 2002 WL 31466564, at *6 (citation omitted). Recoverable copying costs also do not

18    OPINION AND ORDER

include costs associated with in-house photocopying for use by counsel. *Frederick v. City of Portland*, 162 F.R.D. 139, 144 (D. Or. 1995). A party's conclusory assertion that all copies were reasonably necessary to its case is, by itself, insufficient. *Kraft v. Arden*, No. 07-487-PK, 2009 WL 73869, at *9 (D. Or. Jan. 8, 2009). *See also Arboireau*, 2002 WL 31466564, at *6 (same).

Local Rule 54-1(a) describes the requirements for cost bills filed in this district:

> (1) Bill of Costs:  Not later than fourteen (14) days after entry of judgment or receipt and docketing of the appellate court's mandate, the prevailing party may file and serve on all parties a Bill of Costs that provides detailed itemization of all claimed costs.  The prevailing party must file an affidavit and appropriate documentation.

> (2) Verification:  The Bill of Costs must be verified as required by 28 U.S.C. § 1924.

This rule requires the prevailing party to explain the nature of the photocopying so that the court may determine which costs, if any, are properly awardable. *Key Bank Nat'l Ass'n v. Van Noy*, 598 F. Supp. 2d 1160, 1168 (D. Or. 2009); *Robins v. Scholastic Book Fairs*, 928 F. Supp. 1027, 1035 (D. Or. 1996).

City's request for $1,964.27 in copying costs lacks the specificity this district requires. Although City submits receipts to substantiate the amount incurred for copying costs, those receipts refer only generally to "scanning heavy litigation". The receipts do not specify the documents copied on each occasion for which the third-party vendor billed City.  Nor do the receipts identify the purpose for which the copies were made.  The supporting memo and declarations City submitted with its cost bill likewise do not supply this detail.

The lack of specificity is not remedied by City's representation that the copies were reasonable and necessary, and that none of the copies were for City's counsels' personal use. Those representations, by themselves, are not sufficient to substantiate that these copying costs are, in fact,

recoverable. *See, e.g., Kraft v. Arden*, 2009 WL 73869, at *9. The court cannot determine what copies were made for what purpose, at what stage of the case the copies were made, or whether unnecessary copies are included in City's request for reimbursement, all of which is information required for a determination of necessity under Rule 54. As importantly, the lack of specificity deprives Hunt of the opportunity to object to specific copy costs. For this reason, City's request for copy costs is denied.

Further, City's request for copying costs includes the cost of labor required to scan documents into digital format and electronically number those documents. These expenses typically are not separately recoverable costs because they are considered part of an attorney's overhead. *See Key Bank*, 598 F. Supp. 2d at 1165-66 (denying, inter alia, costs of scanning documents as attorney overhead). That City hired a third-party vendor to scan, copy, and number documents does not convert into an item of recoverable cost an expense which, when performed by a party's attorney's staff, would not be recoverable under Rule 54. This is true even if, as City represents, its use of a third-party vendor promoted time and cost efficiency. That result is commendable but, again, a non-recoverable item of cost does not become a recoverable item under Rule 54 simply because the prevailing party found a way to perform the task less expensively. To the extent City's request for copy costs includes the labor cost to perform these tasks, its request for copy costs is denied for this additional reason.

2.    Enlarged Exhibits.

City seeks $1,712.50 in reimbursement of expense for "creation of trial exhibit." (Johnston Aff. at p. 11.) City explains this amount is the cost for two enlarged exhibits admitted and used at trial: a timeline of events (Ex. 101) and an "updated" version of the same timeline (Ex. 237).

20    OPINION AND ORDER

(Johnston Aff. at p. 13.)  Hunt objects to this cost as "not especially helpful" and of only "marginal

assistance" to the court and jury.  (Pl's Objections at 10.)

This court has declined to award costs for enlarged exhibits that were merely large versions

of standard-size exhibits previously admitted into evidence at trial.  In *Williamson v. Munsen Paving,*

*LLC*, No. 09-736-AC, 2011 WL 723028, at *5-6 (D. Or. Feb. 22, 2011), this court refused the

prevailing plaintiff's request for the expense of enlarged exhibits:

> The court disallows these costs.  Although the district court has discretion to
> construe the meaning and scope of the items enumerated as taxable costs in §1920,
> "[t]he Court must limit an award of costs to those defined in 28 U.S.C. § 1920,"
> *Haagen-Dazs Co., Inc. v. Double Rainbow Gourmet Ice Creams, Inc.,* 920 F.2d 587,
> 588 (9th Cir. 1990) (citing *Crawford Fitting Co. v. J.T Gibbons, Inc.,* 482 U.S. 437,
> 441-42 (1987)).  "Section 1920 does not contain any provision for shifting the cost
> of designing or creating demonstrative exhibits." *Teicher v. Regence Health and Life*
> *Ins. Co.,* No. 06-CV-1821-BR, 2008 WL 5071679, at *12 (D. Or. Nov. 24, 2008).
> Judge Brown's observation in *Teicher* is consistent with § 1920's wording, which
> does not expressly authorize recovery of enlarged versions of trial exhibits which the
> court already has admitted in their original size.
>
> Furthermore, this conclusion is consistent with the well-established case law
> disallowing costs of copies made for counsel's convenience:  enlarged versions of
> already admitted standard-size exhibits are purely for counsel's convenience.
> Convenience, not necessity, is the dominant factor here:  enlarged exhibits of this
> type are unnecessary because of the availability to counsel of the court's electronic
> evidence system.  That system allows counsel to either display page-sized exhibits
> to the jury on video screens in the jury box or project such exhibits onto the
> courtroom's large screen so that all may see the exhibit.  Thus, the expense for
> enlarging original exhibits and mounting them on boards is not "necessarily
> obtained" as contemplated by § 1920.

*Williamson,* 2011 WL 723038, at *6.

Here, City seeks the identical cost this court declined to award in *Williamson*.  Enlarging and

mounting on boards these two exhibits was not necessary.  Both exhibits were admitted in standard-

size format and could have been displayed on the court's evidence equipment.  City's decision to

enlarge the exhibits and mount them on boards is a convenience, not a necessity.  The availability

21    OPINION AND ORDER

to the parties of the court's electronic evidence system proves this true, as the system is designed to allow the jury, the witness, counsel, and the court to see on computer screens located throughout the courtroom standard-size exhibits. The system also allows the exhibit to be enlarged on those screens and, as importantly, on the large drop-down screen in the courtroom. The court denies this item of cost.

Further, to the extent the total amount or any portion of it includes the expense of designing the two exhibits, the court declines to award an amount for this work because it does not meet Rule 54's "necessary" requirement. City hired a third-party vendor to design and produce both a timeline of relevant events and an updated version of the same timeline to reflect information elicited on cross-examination. The two receipts City offers to support this expense (Johnston Aff., Exs. 63 and 64) contain only vague descriptions of the tasks performed: "illustration" and "project management" (Ex. 63), and "designer" and "principal" (Ex. 64). The meaning of these descriptions, the tasks that were performed, and how the amount for each task is warranted cannot be discerned, and none of City's supporting memoranda or declarations provide further clarity. The court cannot determine whether or not these individual expenses are necessary, and declines to award them.

In addition, City offers no explanation why a graphic design firm was needed to create a simple timeline of events. The two exhibits – more accurately, a single exhibit that was reproduced and slightly modified – presented simple information. Each exhibit consisted of a single page on which appeared three calendar weeks arranged in three rows of seven days. Half of the days contained one or more events that occurred on that particular day, with each event briefly described. The events are color-coded, according to the type of event. The information displayed on the exhibits did not require the expertise of a third-party graphic designer to present for the jury to

understand it, and it could have been presented through much less expensive means. That City instead chose to hire an speciality firm to create an attractive and professionally produced timeline is not an inappropriate tactical decision, but the expense of it was not "necessary" as Rule 54 contemplates. Hunt should not bear the resulting cost.

For these reasons, City's request for this item of cost is denied.

### 3.    Trial technology specialist and trial support.

City seeks $19,398.45 for expenses described as "trial support." More specifically, this amount includes the cost City incurred to hire a local court reporting firm who supplied a third-party trial technology specialist to display exhibits and portions of exhibits as they were used at trial during witness examination, opening statements, and closing arguments. Other services were provided, examples of which are described in the supporting billing statements as "black and white pages photocopied", "pagination", and other tasks. (Johnston Aff., Exs 65-67.) Expenses reflected on the billing statements include"projector", "sound system", and "parking". (*Id.*)

City supports its request with the observation that it avoided incurring the cost of individual enlarged exhibits because the "enlargements" were created electronically on the courtroom screens, when needed. (Johnston Aff. at p. 13.) Use of the specialist also enabled City to quickly and efficiently display exhibits and deposition clips for impeachment, thereby efficiently using the available time for trial. (*Id.* at pp. 13-14.) City also justifies the specialist's cost with the assertion that impeaching Hunt with the video version of her deposition was necessary to show the difference in her deposition and trial affect while testifying. (*Id.*) ("The City could not have impeached [Hunt] as effectively without the use of the multi-media system.").

Although the district court has discretion to construe the meaning and scope of the items

23    OPINION AND ORDER

enumerated as taxable costs in §1920, "[t]he Court must limit an award of costs to those defined in

28 U.S.C. § 1920," *Haagen-Dazs Co., Inc. v. Double Rainbow Gourmet Ice Creams, Inc.,* 920 F.2d

587, 588 (9th Cir.1990) (citing *Crawford Fitting Co. v. J.T. Gibbons, Inc.,* 482 U.S. 437, 441-42

(1987)). Even though there is a presumption in favor of a cost award to the prevailing party, Rule

54(d) makes clear that the district court retains the discretion to direct otherwise. *Crawford Fitting*

*Co.*, 482 U.S. at 441-42. As noted above, "[s]ection 1920 does not contain any provision for shifting

the cost of designing or creating demonstrative exhibits." *Teicher*, 2008 WL 5071679, at *12.

Nonetheless, a finding that the exemplification was "necessarily obtained for use in the case" does

not definitively resolve the question of reimbursement either. *Cefalu v. Village of Elk Grove*, 211

F.3d 416, 429 (7th Cir. 2000).

In *Cefalu v. Village of Elk Grove*, 211 F.3d 416 (7th Cir. 2000), the court noted that costs

associated with "exemplification" are a recoverable cost under, § 1920(4), but that the statute does

not define the term. *Id.* at 427. The Seventh Circuit then observed:

> In this case, the judge drew a line between the physical preparation of a trial
> exhibit, which would be compensable as exemplification, and the means chosen to
> present that exhibit to the jury, which she believed would not be. We appreciate the
> convenience of that line, and there is a certain logic to it. Here, for example, the
> multi-media services for which the defendants seek compensation were auxiliary in
> the sense that these services did not involve the creation of diagrams, charts, or
> graphs, but merely the packaging and display of pre-existing documents and other
> exhibits. To that extent, the use of a multi-media presentation may have less to do
> with conveying information to judge and jury than it does with an effort to wow them.
> No doubt the statute does not obligate the losing party to pay for the victor's "glitz,"
> as Judge Leinenweber has observed. *BASF Corp. v. Old World Trading Co.*, No. 86
> C 5602, 1992 WL 229473, at *3 (N.D. Ill. Sept. 11, 1992).

*Cefalu*, 211 F.3d at 428.

Here, City's specialist's role at trial mirrored the role the Seventh Circuit described as "an

effort to wow [the jury]." Throughout trial, the specialist displayed on the courtroom's computer

24    OPINION AND ORDER

screens exhibits which the court previously admitted in standard-size format. Those same exhibits could have been placed on the court's electronic evidence equipment to display them to the jury and the witness. Portions of the exhibits also could have been enlarged by using the court's evidence equipment. In fact, Hunt used the court's equipment to both display and enlarge standard-size exhibits; when she did, she located and displayed them with appropriate efficiency, and the exhibits were readable to the court and jury. Although City's specialist often electronically highlighted or enlarged specific portions of exhibits at City's counsels' request, the same basic effect could have been achieved using the courtroom's electronic evidence equipment. At bottom, the specialist added the "glitz" to City's case which, as the Seventh Circuit concluded, "the statute does not obligate the losing party to pay for." City's decision to rent a multi-media system and hire a specialist to operate it was a decision to incur a cost that does not meet the "necessity" requirement, and Hunt should not bear the cost of that decision.

City's contention that it more effectively impeached Hunt through use of the video version of her deposition does not rescue as recoverable the portion of costs associated with using this impeachment method. City had available to it Hunt's printed deposition transcripts for use in impeaching Hunt at trial. Instead, City chose to display Hunt's video deposition on the courtroom screens while simultaneously showing the text of Hunt's deposition transcript at the bottom of the screen. The difference City sought to demonstrate between Hunt's deposition testimony and her trial testimony was, in practice, negligible, particularly when compared to the cost of the method City used to in its attempt to show that difference.

Hunt's case also lacked complexity, a factor that bears on whether City's use of a trial technology specialist was warranted. Hunt took two claims to trial against City, both of which turned

25    OPINION AND ORDER

on whether City retaliated against Hunt because she reported misconduct by her field training officer. The evidence at trial consisted almost exclusively of lay-witness testimony and documents containing simple text. The specialist's work at trial was professional, skilled, and discrete, but not necessary to assist the jury's or the court's understanding of Hunt's claims and the parties' evidence on those claims. In this case, use of this method to display and highlight evidence added no clarity to the evidence. Hunt, as the losing party, should not bear the cost of that method.

Accordingly, City's request for the cost of the trial technology specialist and related trial support expenses is denied.

    *E.    Docket Fees (28 U.S.C. § 1920(5))*

A prevailing party may recover a docket fee "under section 1923 of this title." 28 U.S.C. § 1920(5). Section 1923(a) provides: "Attorney's and proctor's docket fees in courts of the United States may be taxed as costs as follows: $20 on trial or final hearing (including a default judgment whether entered by the court or by the clerk) in civil, criminal, or admiralty cases[.]" City seeks $160.00 as a docket fee under the reasoning that each of the eight defendants is a "prevailing party," and each therefore is entitled to $20.00 as a docket fee.

Defendants misinterpret this subsection. A docket fee is commonly referred to as an "attorney's docket fee." *See, e.g., U.S. v. Orenic*, 110 F.R.D. 584, 588 (W.D. Va. 1986) ("[Section 1923(a)] establishes an exception to the general rule that attorney's fees may not be taxed as costs, and allows for recovery of nominal sums known as attorney's or proctor's docket fees" and establishes "a nominal, statutory fee to be awarded to a prevailing party, irrespective of the actual costs which that party may have incurred in hiring an attorney to bring or defend the suit.") (citations and internal quotations marks omitted). As this language suggests, the docket fee is intended to

26    OPINION AND ORDER

compensate for the cost of retaining an attorney. *See, e.g., Karsoules v. Moschos*, 16 F.R.D. 363, 365 (E.D. Va. 1954) ("It is not the duty of the Court to inquire into the intent of Congress in providing for the taxation of small docket fees to be paid to attorneys and proctors under Section 1923. Whether it is by way of supplementing compensation to counsel or in the nature of a penalty is immaterial. In the exercise of proper discretion, it is as much a part of the taxable costs as any other item."). Where multiple parties together bring suit under or defend against a common set of facts and theories, a single docket fee "is prescribed and proper." *Firemen's Fund Ins. Co. v. Standard Oil Co. Of Cal.*, 339 F.2d 148, 160 (9th Cir. 1964) (affirming on cross-appeal the trial court's award of a single $20.00 docket fee to multiple prevailing plaintiffs where a single lawyer represented all plaintiffs); *Boston Marine Ins. Co. V. Metropolitan Redwood Lumber Co.*, 197 F. 703, (9th Cir. 1912) (a docket fee "is a fee to be allowed the proctor as an incident to his appearance and service in court on the hearing, and not as a fee for appearing for each client whom he represents").

Hunt originally sued City and seven individual defendants, asserting claims against each of them. The eight defendants prevailed, but each is not a "prevailing party" for purposes of the docket fee. All defendants were represented by the same attorney, all were sued based on the same set of facts, and all defended together against mostly common theories of liability. They each are not entitled to recover a $20.00 fee. Accordingly the court allows a single docket fee in the amount of $20.00.

### Order

For the reasons explained above, City's cost bill (Docket No. 187) is GRANTED in part and DENIED in part, as follows:

Filing fee:                                                $  350.00

27    OPINION AND ORDER

Fees for printed or electronically recorded transcripts:          8,476.01

Fees and disbursements for witnesses:          691.13

Fees for exemplification and copies:          0.0

Docket fees:          20.00

**TOTAL COSTS AWARDED:**          **$9,537.14**

IT IS SO ORDERED.

Dated this _10_th day of August, 2011.

_____
John V. Acosta
U.S. Magistrate Judge